**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS PETRO, ) | CASE NO. 1:19-CV—00027 |
| ) | |
| Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| ANDREW SAUL, ) | |
| *Comm'r of Soc. Sec.*, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff, Thomas Petro (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On November 30, 2015, and March 24, 2016, Plaintiff filed his applications for DIB and SSI, respectively, and alleged a disability onset date of May 1, 2013. (Transcript ("Tr.") 186-193). The applications were denied initially and upon reconsideration, and Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"). (Tr. 59-123). Plaintiff participated in the hearing on November 17, 2017, was represented by counsel, and testified. (Tr. 30-58). A vocational expert ("VE") also participated and testified. *Id*. On April 25, 2018, the ALJ found Plaintiff not disabled. (Tr. 12-29). On November 2, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On January 4, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 12).

Plaintiff asserts the following assignment of error: (1) the ALJ erred at Step Five of the sequential evaluation. (R. 10).

## II. Evidence

### A. Relevant Medical Evidence[1]

**1. Treatment Records**

On May 12, 2014, Plaintiff was hospitalized for a lung abscess, pneumonia and developed empyema, eventually undergoing a chest tube placement. (Tr. 377, 397, 433, 436, 441, 483-84). Plaintiff was unemployed at the time but told medical sources that he does do "odd jobs as well as cement work" (Tr. 441, 492). He was noted as having a long history of alcohol dependence. (Tr. 436). He was discharged on May 28, 2014. (Tr. 433).

On June 12, 2014, Plaintiff said he felt "okay," had no specific complaints, and indicated he was anxious to go back to work. (Tr. 374).

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

On August 11, 2014, Plaintiff saw Miodrag V. Zivic, M.D. (Tr. 309-311). A physical examination of Plaintiff yielded normal findings (Tr. 309, 320), although he was diagnosed with intractable back pain. (Tr. 321).

On November 18, 2014, Plaintiff saw Dr. Zivic, and he complained of severe bilateral leg pain and some weakness. (Tr. 320). On the same date, an MRI of the cervical spine showed degenerative changes with severe bilateral neural foraminal narrowing at C3/4 and C5/6 (Tr. 334-335). A lumbar MRI showed lumbar spondylosis. (Tr. 338-39).

On December 4, 2014, Fady Nageeb, M.D., indicated that Plaintiff had normal motor and sensory function in his arms and legs, but had positive facet loading on the lumbar spine. (Tr. 360-361). Dr. Nageeb did not believe narcotic treatment was appropriate, and prescribed a chronic pain rehabilitation program. *Id*.

On January 6, 2015, Teresa Ruch, M.D., opined that the cervical MRI did not show "anything that needs to be operated on…" (Tr. 357). Dr. Ruch noted slight weakness in Plaintiff's quads bilaterally, "[s]ensation appears to be intact to pin he has no reflexes in the upper and lower extremities", and normal gait (Tr. 357).

On January 29, 2015, an MRI of the lumbar spine revealed lumbar spondylosis with moderate central canal stenosis at L2/3 and L3/4. (Tr. 331). An X-ray taken the same date showed mild degenerative changes in the lumbar spine without instability. (Tr. 333). Dr. Ruch characterized the results as showing "very mild lumbar stenosis" at multiple levels that did not warrant surgery and she suggested an EMG nerve conduction study to rule out neuropathy. (Tr. 355).

On June 8, 2015, Plaintiff returned to Dr. Zivic and complained of a lot of pain in his back and legs. (Tr. 325). Physical examination findings were again normal. *Id*. Dr. Zivic

recommended a pain management consultation (Tr. 326).

On September 8, 2015, Deidra Bobincheck, CNP, examined Plaintiff and found no abnormalities on physical examination. (Tr. 336). She assessed essential hypertension, unspecified lipidemia, and tobacco use disorder. *Id*.

On January 13, 2016, Plaintiff saw Dr. Nageeb for pain management, complaining of 8 out of 10 pain. (Tr. 1078). Dr. Nageeb noted positive facet loading on the lumbar spine suggestive of facet syndrome. (Tr. 1078-1079).

On April 6, 2016, Plaintiff had completed ten sessions of physical therapy, and reported that his pain has continued and possibly worsened. (Tr. 1044).

On May 20, 2016, Plaintiff began receiving facet injections administered by Dr. Nageeb. (Tr. 1039-1040).

On June 14, 2016, Plaintiff reported to Dr. Ruch that his back and leg pain are so great that he can hardly stand up or walk the length of his yard without stopping. (Tr. 1134). Dr. Ruch noted cervical spine MRIs show severe degenerative changes but no cord compression and a calcified posterior longitudinal ligament, which she speculated was "probably the reason for his pain." (Tr. 1134). She observed that an EMG nerve conduction study showed severe carpal tunnel syndrome. *Id*. There was no evidence of cervical radiculopathy. (Tr. 1135). Dr. Ruch discussed carpal tunnel release surgery with the Plaintiff. *Id*.

On June 7, 2016, Plaintiff reported he was positive for back, joint, and neck pain. (Tr. 1158). Dr. Zivic's physical examination found Plaintiff was in no distress, he had normal range of motion, normal reflexes, and normal gait. (Tr. 1158-1159).

On July 7, 2016, a new lumbar MRI showed that Plaintiff's lumbosacral spine was stable since January 29, 2015. (Tr. 1190). A new cervical MRI revealed no significant changes from

4

Plaintiff's prior MRI. (Tr. 1186).

On October 31, 2016, Dr. Ruch suggested back surgery to Plaintiff, who indicated he was not interested in surgery at that time and expressed a desire to return to pain management. (Tr. 1142).

On November 8, 2016, Plaintiff reported a pain level of 9 out of 10 to Dr. Nageeb, but also reported that his medications were helping for the most part. (Tr. 1149). Plaintiff had a positive straight leg-raising (SLR) test on the left side, and Dr. Nageeb diagnosed spinal stenosis in the lumbar region without neurogenic claudification. (Tr. 1150).

On January 13, 2017, Plaintiff received a lumbar epidural steroid injection. (Tr. 1155).

On March 23, 2017, Dr. Zivic noted Plaintiff was negative for back pain, falls, joint pain, myalgias and neck pain. (Tr. 1160). Plaintiff was also negative for dizziness, tingling, tremors, sensory change, and weakness. *Id*. On examination, Plaintiff had normal range of motion, reflexes and gait. (Tr. 1161). Dr. Zivic assessed abrasion of the left big toe, a screening for depression, essential hypertension, and a colon cancer screening. *Id*.

On June 19, 2017, Dr. Zivic again observed that Plaintiff was negative for back pain, falls, joint pain, myalgias, neck pain, dizziness, tingling, tremors, sensory change, and weakness. (Tr. 1163). On examination, Plaintiff had normal range of motion, reflexes and gait. (Tr. 1164). Dr. Zivic assessed essential hypertension and chronic back pain. *Id*.

On August 18, 2017, Plaintiff was seen by Dr. Ruch and agreed to pursue carpal tunnel surgery on his left hand, reporting greater numbness, tingling, and some atrophy. (Tr. 1166).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On February 22, 2016, State Agency physician Anton Freihofner, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could lift/carry twenty pounds occasionally

5

and ten pounds frequently, stand/walk about six hours and sit for about six hours each in an eight-hour workday. (Tr. 69). Dr. Freihofner further limited Plaintiff to occasional climbing of ramps/stairs, balancing, stooping, kneeling, and crouching with no crawling or climbing of ladders/scaffolds. (Tr. 69-70). Dr. Freihofner limited Plaintiff to no reaching overhead, and limited reaching and handling. (Tr. 70).

On June 7, 2016, Dr. Zivic completed a check-box style form indicating that Plaintiff had cervical radiculopathy with a two-year history and that his physical findings in support were "bilateral arm numbness, pain." (Tr. 1062). He indicated Plaintiff could stand/walk and sit for less than one hour each in an eight-hour workday. (Tr. 1063). He opined Plaintiff could lift/carry ten pounds frequently. *Id*. He assessed moderate limitations in Plaintiff's ability to push/pull, bend, reach, and handle. *Id*. The doctor noted the following findings in support of his opinion: "[d]ecreased motor strength of the arms, pain with movements." *Id*.

On June 21, 2016, State Agency physician Elizabeth Das, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk about six hours and sit for about six hours each in an eight-hour workday. (Tr. 82). Dr. Das further limited Plaintiff to frequent kneeling, occasional climbing of ramps/stairs, balancing, and no climbing of ladders/scaffolds. (Tr. 82-83). Dr. Das limited Plaintiff to occasional reaching overhead, limited reaching, and unlimited handling and fingering. (Tr. 83).

On July 18, 2016, Dr. Zivic completed a Physical RFC questionnaire indicating that Plaintiff could lift/carry less than ten pounds frequently, stand/walk for less than two hours, and sit for about three hours in an eight-hour workday. (Tr. 1115). He circled boxes indicating Plaintiff would need to shift positions every 15 to 20 minutes, and needed to lie down at

6

unpredictable intervals during a work shift due to back and neck pain. (Tr. 1115). Dr. Zivic indicated Plaintiff could occasionally reach, handle, finger, and feel, and push/pull "less than occasionally." (Tr. 1116). When asked what findings support his assessment, Dr. Zivic only noted "MRI degenerative changes." (Tr. 1116).[2]

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not

---

[2] As Plaintiff's brief does not challenge the reliability of the VE's testimony nor the ALJ's credibility assessment of Plaintiff's testimony, the court foregoes any recitation of the hearing testimony.

performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since May 1, 2013, the alleged onset date (20 CPR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease and carpal tunnel syndrome (20 CPR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally push/pull with the bilateral upper extremities; occasionally reach overhead to the left, and occasionally reaching overhead to the right; frequently handle with the left hand, and can handle items frequently with the right hand; frequent fingering limitations with the left hand, and fingering limitations

> frequently with the right hand; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; balance, stoop, crouch and crawl occasionally; kneel frequently; and never work at unprotected heights or around moving mechanical parts.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on *** 1965 and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-24).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial

evidence, regardless of whether it has actually been cited by the ALJ. (*Id*.) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

In the sole assignment of error, Plaintiff asserts the ALJ erred at Step Five of the sequential evaluation and contends that the RFC is not supported by substantial evidence. (R. 10, PageID# 1261-1263).

Plaintiff's brief contains several propositions of law that have not been fully developed into arguments. (R. 10, PageID# 1263-1265). First, Plaintiff makes the assertion that "sporadic daily activities may not indicate what a claimant can do on a sustained basis particularly where the claimant experiences periods of remission and exacerbation," but fails to develop any related argument. (R. 10, PageID# 1263). Later in his brief, Plaintiff cites his own testimony and suggests he had difficulty performing household chores. *Id*. at PageID# 1265. As stated below, however, the ALJ did not find Plaintiff's statements as to the intensity, persistence, or limiting effects of his symptoms to be consistent with the evidence of record, and Plaintiff has not argued any error with respect to the ALJ's credibility finding. (Tr. 20). Plaintiff also suggests that his

10

daily activities do not necessarily translate to an ability to perform light work. (R. 10, PageID# 1263). However, the RFC finding is not predicated upon Plaintiff's ability to perform activities of daily living ("ADLs"). The ALJ does mention Plaintiff's ADLs as one of several reasons for ascribing Dr. Zivic's opinion little weight.³ (Tr. 22). Nevertheless, the RFC for light work is supported by the opinions of the State Agency physicians who both opined Plaintiff can perform the lifting, standing/walking, and sitting demands of light work, and to whose opinions the ALJ ascribed partial weight. *Id*.

State Agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the State Agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that State Agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the State Agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (State Agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.") Although Plaintiff contends

---

³ The weight accorded to Dr. Zivic's opinion is discussed in greater detail below.

that a more restrictive RFC could have been assessed based on the medical record, that belief does not establish a violation of the substantial evidence standard.

Next, Plaintiff asserts that "[t]he evidence demonstrates that Plaintiff has a well-established low back impairment, as well as a cervical spine impairment and moderately severe bilateral carpal tunnel syndrome. These impairments impose significant limitations on the plaintiff's ability to stand and/or walk for longer periods of time; as well as the use of his hands, including handling, fingering and feeling." (R. 10, PageID# 1263). Again no argument is developed. Further, Plaintiff's assertion that his impairments necessitate greater limitations than found in the RFC, without more, is simply an unsubstantiated conclusion. The ALJ recognized that Plaintiff suffers from the above impairments when he determined that Plaintiff's severe impairments included cervical and lumbar degenerative disc disease and carpal tunnel syndrome. (Tr. 17). Although an impairment is severe, it is not necessarily debilitating. A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

In addition to the above statements in Plaintiff's brief, he also includes a limited discussion of his MRI and EMG results, but that discussion fails to demonstrate any error in the RFC determination. (R. 10, PageID# 1263-1264). Plaintiff also offers his own lay interpretation of the MRI and EMG findings, concluding, without explanation, that they corroborate the severity of his alleged limitations and, therefore, the RFC is untenable. (R. 10, PageID# 1264). Such an "argument" fails to demonstrate the need for a remand.

Plaintiff proceeds to mention his own testimony that he has difficulty standing/walking or using his hands. (R. 10, PageID# 1264). However, the ALJ did not fully credit Plaintiff's testimony, finding his statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20). Plaintiff's Brief on the Merits, however, has not supported a legal argument alleging any substantive or procedural deficiency regarding the ALJ's credibility analysis.[4] (R. 10). Rather, Plaintiff merely suggests his testimony contradicts the RFC finding. Accordingly, he has waived any argument on the issue. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 U.S. Dist. LEXIS 64805, 2016 WL 2868735 at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

Finally, Plaintiff takes issue with the ALJ ascribing little weight to the opinion of treating

---

4 The court recognizes that Social Security Ruling ("SSR") 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) eliminated the term "credibility." Nevertheless, "[t]he Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court recognizes the more recent SSR's changes, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

13

physician, Dr. Zivic, and assigning greater weight to the opinions of State Agency physicians. (R. 10, PageID# 1265-1267). "Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

The ALJ addressed Dr. Zivic's opinion as follows:

14

> Treatment source, Miodrag Ziviv [sic], M.D., opined in June and July 2016 that the claimant could perform the equivalent of less than sedentary work, could be expected to be absent from work more than three times a month, and was unemployable. (Exhibits 9F; 11F) This assessment is assigned little weight because the extreme restriction is inconsistent with and not supported by the evidence of record as a whole. As explained above, despite the claimant's neck, back and bilateral hand conditions, physical examinations throughout the record show generally benign findings, treatment has been generally conservative with no surgical intervention and the claimant has declined surgical intervention for his hands and back. Moreover, the claimant's activities of daily living do not appear significantly impacted by his impairments in that he remains able perform independent self-care subject [sic], prepare simple meals, perform household chores, goes out alone, has ability to manage money and has no difficulty getting along with others. (Exhibits 3E) Additionally, determinations of employability are solely reserved for the Commissioner.

(Tr. 22). The ALJ's statement is supported by his earlier discussion, which determined in pertinent part:

> Despite complaints of pain in the lower back radiating to the lower extremity and neck pain radiating to the arms and hands, along with numbness and weakness, physical examinations throughout the record showed generally benign findings including cervical, thoracic and lumbar spine in normal limits on visual inspection, 5/5 strength in all muscle groups, normal sensory examination, and normal gait, except for slight weakness in both arms throughout, decreased sensation in the hands from the knees down and at times limited range of motion in the lumbar spine. (Exhibits 1F-19F; 20F/3, 8) In addition, while surgical intervention has been recommended, treatment thus far has been generally conservative in the form of physical therapy for strengthening, nerve blocks and pain medication management. In fact, the claimant's lumbar stenosis was considered too mild in February 2015 to warrant surgery. (Exhibit 8F/3; 10F/2, 6; 20F/5, 7, 10) Likewise, it was indicated in January 2015 that the MRI of the cervical spine did not show anything that needed to be operated on. (Exhibit 20F/3) Further, while carpal tunnel release was recommended in June 2016, it was not until August 2017 that the claimant expressed interest in undergoing the procedure, left hand first because he was having more numbness, tingling and some atrophy in this hand; prior treatment only included heat, ice and Motrin. (Exhibit 20F/7, 10, 14) In October 2016, … laminectomy foraminotomies was recommended due to the claimant's continued complaint of back pain radiating to the bilateral legs with weakness and numbness in both feet, but the claimant indicated that he was only interested in pain management at that time. (Exhibit 20F/7, 10, 12).

(Tr. 21).

Thus, the ALJ offers several good reasons for finding that Dr. Zivic's opinion should only be ascribed little weight: generally benign findings upon physical examination; conservative, treatment, Plaintiff's lack of interest in surgical intervention, and Plaintiff's ADLs. (Tr. 20). Indeed, "[i]nconsistencies with the treatment notes provide a good reason to not give the treating physician's opinion controlling weight." *Landuyt v. Berry Hill*, 2018 U.S. Dist. LEXIS 51239, *15 (N.D. Iowa, Mar. 28, 2018); s*ee also Jung v. Comm'r of Soc. Sec.*, No. 1:11-CV-34, 2012 WL 346663, at *14 (S.D. Ohio Feb. 2, 2012) (finding the ALJ gave "good reasons" for discounting a treating physician's opinions "by citing their internal and external inconsistencies and contradictions"), *report and recommendation adopted*, 2012 WL 628459 (S.D. Ohio Feb. 27, 2012).

Plaintiff has failed to set forth any clear argument demonstrating that the reasons given by the ALJ for not ascribing greater weight to Dr. Zivic's opinion failed to constitute good reasons, other than Plaintiff's contrary but unsubstantiated interpretation of the record. Plaintiff's argument essentially asks the court to override the ALJ's weighing of the medical opinions in question based on Plaintiff's own interpretation of the medical evidence in his briefs. This is tantamount to an invitation for this court to reweigh the evidence and to assign greater weight to Dr. Zivic's opinions rather than an argument that the ALJ failed to provide good reasons for rejecting them. This court's role in considering a social security disability appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

16

Finally, to the extent Plaintiff argues it was error for the ALJ to assign little weight to Dr. Zivic's opinions while assigning partial weight to the State Agency physicians' opinions, there is no indication that the ALJ improperly discounted Dr. Zivic's opinion in favor of the State Agency physicians *because* it was inconsistent with the State Agency opinions.[5] (Tr. 22). Moreover, Plaintiff's contention that the State Agency physicians did not have access to some of the medical evidence because the opinions were authored in February of 2016 and June of 2016, does not provide a basis for remand. *See, e.g., Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (claimant "misconstrues the Court's holding in *Blakley v. Commissioner of Social Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record"); *Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 554 (6th Cir. 2016) (finding no error where the ALJ accorded greater weight to the opinions of State agency physicians than to a treating source where the ALJ provided "sound reasons" supported by substantial evidence); *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013 WL 121813 at *6 (S.D. Ohio Jan. 9, 2013) ("There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole."), *report and recommendation adopted*, 2013 WL 1090303 (S.D. Ohio Mar. 15, 2013).

---

[5] Where the reason given for rejecting a treating source's opinion is simply that it conflicts with a non-treating source's opinion, the treating physician rule has been violated. *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State agency consultants, as that would turn the treating physician rule on its head); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011) (White, M.J.). Here, the ALJ gave sufficient "good reasons" for discounting the treating physician's opinion, independent of the State agency physician's conflicting opinions.

Plaintiff's sole assignment of error is without merit for the aforementioned reasons.

### VI. Conclusion

It is recommended, for the foregoing reasons, that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: December 20, 2019

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**